UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Leon Kuchenmeister, Cindy A. Hugger-Gravitt, and Beth A. Bretoi, individually and on behalf of all those similarly situated, | ) ) ) ) | |
| | ) | Civil Action No. |
| Plaintiffs, | ) | 1:17-cv-01001-RWS |
| | ) | |
| v. | ) | |
| | ) | |
| HEALTHPORT TECHNOLOGIES, LLC, IOD INCORPORATED, AND CIOX HEALTH, LLC INDIVIDUALLY AND d/b/a       IOD INCORPORATED AND HEALTHPORT TECHNOLOGIES, LLC, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) and 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MEMORANDUM IN SUPPORT

COMES NOW Defendants HealthPort Technologies, LLC, IOD Incorporated, and Ciox Health, LLC, individually and d/b/a IOD Incorporated and HealthPort Technologies, LLC ("Ciox")[1] and hereby move to dismiss the Plaintiffs' complaint pursuant to a) Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Plaintiffs have failed to state any claim upon which relief can be granted; and b) Rule 9(b) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs failed to plead fraud with particularity.

## I.  INTRODUCTION

Plaintiffs are alleged to be three Minnesota residents who requested copies of their medical records from their healthcare providers.  Plaintiffs complain that Ciox, acting on behalf of these providers,  charged them for copies of these medical records at rates that are not in compliance with the Health Insurance Portability and Accountability Act ("HIPAA") or guidance about HIPAA disseminated by the Department of Health and Human Services (the "DHHS Access Guidance").   As such, the present case involves a transparent attempt by Plaintiffs to assert a private cause of action for damages under HIPAA and the DHHS Access Guidance, a legal proposition that has routinely been rejected by

---

[1]      In 2015, HealthPort Technologies, LLC and IOD Incorporated merged. Since that time, IOD Incorporated has ceased to exist and thus is not a proper party in this action.  Thereafter, HealthPort Technologies, LLC changed its name to Ciox Health.

the U.S. Congress, the DHHS, state courts in Georgia, and virtually every single U.S. federal court to consider the issue.  This issue is dealt with in Ciox's motion to dismiss for lack of standing and subject matter jurisdiction filed contemporaneously herewith.

Even if this Court had jurisdiction to consider the state law claims asserted by Plaintiffs here, however, the Plaintiffs' claims must also all be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiffs' claims should be dismissed because: a) the voluntary payments doctrine bars the Plaintiffs' efforts to recover payments they voluntarily made; b) the Plaintiffs' unjust enrichment and money had and received claims fail because those equitable claims cannot survive where a contract exists; c) the Plaintiffs' fraud and negligent misrepresentation claims fail because the Plaintiffs have alleged no fraudulent statement made by Ciox, and have affirmatively alleged that they did *not* justifiably rely upon any statement of Ciox; d) the Plaintiffs' claims under the Georgia Fair Business Practices Act ("FBPA") fail because a regulatory agency regulates the actions or transactions at issue and thus a clear exception applies barring the Plaintiffs' FBPA claims, and e) because no other claim survives, the Plaintiffs' claims for punitive damages and attorneys' fees also fail as a matter of law.

Moreover, Plaintiffs have failed to state their fraud claim with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure, and accordingly, that claim should be dismissed or Plaintiffs should be required to re-plead that claim.

## II.    STATEMENT OF RELEVANT FACTS

Ciox contracts with hospitals, health systems, physician practices and clinics to process and fulfill medical records requests.  See Complaint at ¶ 2. Ciox provides these services to numerous healthcare providers, and processes tens of thousands of requests for medical records each day.  Id. at ¶¶ 15-16. When providing copies of medical records that are requested, Ciox is governed by a variety of state and federal statutes and regulations, including HIPAA and the Health Information Technology for Economic and Clinical Health Act of 2009 (the, "HITECH Act") in certain circumstances.  Id. at ¶¶ 17-27.

The named Plaintiffs in this action each requested copies of medical records from their healthcare providers.  Id. at ¶¶ 52, 99, and 150.  The hospitals or healthcare providers from whom the records were requested have contracts with Ciox to fulfill medical records requests made to them.  Id. at ¶¶ 59, 106, and 157.  Plaintiffs contend that Ciox charged for those medical records in excess of

charges allowed under HIPAA and in excess of charges allowed under the DHHS Access Guidance.  See e.g., Id. at ¶¶ 88, 90, 131, 134, 181.[2]

## A.    Named Plaintiff Leon Kuchenmeister.

Named Plaintiff Kuchenmeister alleges that:  On or about July 27, 2016, he requested copies of his medical records from his healthcare provider, Health Partners Clinics, to be provided in electronic form and on CD in the Adobe Acrobat .pdf format.  See Complaint at ¶¶ 52-54.  His medical records had been maintained by Health Partners Clinics in electronic format.  Id. at ¶ 58.  Health Partners Clinics contracted with Ciox to fulfill individual requests for medical records.  Id. at ¶ 59; See Exhibit 2(a) to the motion to dismiss for lack of standing (the Agreement For Services between HealthPort and HealthPartners (the "HealthPartners Contract" including the Business Associate Agreement).[3]  The

---

[2]     The evolution of HIPAA, HITECH and the DHHS Access Guidance is set forth in Ciox's motion to dismiss for lack of standing.

[3]     Ciox attaches its contracts with Health Partners Clinics, Allina Health, and Health East at Exhibit 2 to Ciox's motion to dismiss for lack of standing since Plaintiffs referred to those contracts in the Complaint and has asserted a third-party breach of contract claim based upon those contracts.  See Complaint at ¶¶ 59, 106-108, 157, and 218-233.   "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."  See Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364 (11th Cir. 1997) Ray v. Bank of Am., N.A., 2015 WL 11256939, at *2 (N.D. Ga. July 28, 2015) (same).

HealthPartners Contract provides that it is governed by and interpreted under Minnesota law. See Id. at ¶ 6.8 of the Business Associate Agreement.

On or about August 9, 2016, Ciox copied to a cd a pdf file containing 221 pages of Kuchenmeister's medical records, and Ciox mailed his medical records to his "designated third party," along with a separate letter which provided information on how to access the encrypted file. See Complaint at ¶¶ 63, 65-68. On or around August 11, 2016, Ciox mailed an invoice to Kuchenmeister for $78.12. Kuchenmeister alleges that the charges on the invoice did not meet the requirements of HIPAA, HITECH or the DHHS Access Guidance because Ciox did not calculate actual labor costs incurred in producing the CD, charged more for postage than the amount actually incurred, did not inform him in advance of the actual or approximate fees that may be charged for providing him with PHI in an electronic format, did not outline the average costs, and charged a per page copy fee for the copies totaling for $63.00. Id. at ¶¶ 72-82, 85-90.

Even though Kuchenmeister disputed the amount invoiced, and believed that Ciox had improperly charged him $78.12 for his medical records, Kuchenmeister nonetheless paid the invoice by check. Id. at ¶¶ 92-96. On his check, Kuchenmeister indicated that he was "paying under protest." Id. at ¶ 93. Kuchenmeister's only explanation for voluntarily paying the invoice is that he wanted to avoid any collection attempts regarding the invoice. Id. at ¶ 95.

**B.    Named Plaintiff Cindy A. Hugger-Gravitt.**

Named Plaintiff Hugger-Gravitt alleges that:  On or about June 6, 2016, she requested copies of her medical records from her healthcare provider, HealthEast Hospitals and Clinics, to be provided in electronic form.  Id. at ¶¶ 99-100.  Her medical records had been maintained by HealthEast  Hospitals and Clinics in electronic form and on CD in the Adobe Acrobat .pdf format.  Id. at ¶ 105.  With her request, Hugger-Gravitt attached a DHHS publication, "Individual Rights under HIPAA to Access their Health Information" which recites all of the details regarding the DHHS regulation of access to medical records and the appropriate charges for those records about which the Plaintiffs complain.  Id. at ¶ 123; and Exhibit G to Complaint.

HealthEast Hospitals and Clinics contracted with Ciox to fulfill individual requests for medical records.  Id. at ¶¶ 106-108;  See Exhibit 2(c) to motion to dismiss for lack of standing, the Medical Record Billing Services Agreement Between HealthEast and CM Information Specialists (the "HealthEast Contract," including the Business Associate Addendum).

On or about June 27, 2016, Ciox copied to paper 52 pages of Hugger-Gravitt's medical records, and mailed them in paper format to Hugger-Gravitt's "designated individual."  Id. at ¶ 110.  Hugger-Gravitt alleges that Ciox violated

HIPAA by providing paper copies of the records, rather than electronic copies. Id. at ¶ 114.

Ciox sent Hugger-Gravitt an invoice for $97.71 and asked for Hugger-Gravitt's "designated individual" to issue payment. Id. at ¶¶ 117-119. Hugger-Gravitt alleges that the charges on the invoice did not meet the requirements of HIPAA, HITECH or the DHHS Access Guidance because her medical records were not provided in the form she requested, she was not informed that her PHI was not maintained in electronic format, she was not informed there would be additional charges to produce her PHI in electronic format, she was charged a per page fee, the invoice did not calculate actual labor costs incurred in producing the records, the invoice did not outline any average costs incurred in producing such records, and she was charged more than $6.50. Id. at ¶¶ 114-129, 131-136. After Hugger-Gravitt received the invoice, she had her attorneys respond to the invoice by letter to inform Ciox that the charges were unreasonable and illegal, specifically set forth why Hugger-Gravitt believed the charges were unreasonable and illegal, and again provided a copy of the DHHS publication of "Individuals' Rights under HIPAA to Access their Health Information" to Ciox. Id. at ¶¶ 137-139; and Exhibit G to the Complaint (setting forth everything Hugger-Gravitt alleges that Ciox did wrong with its charges for providing medical records). Hugger-Gravitt also sent a check for $6.50 to Ciox,

which Ciox cashed.  Complaint at ¶ 140.  Ciox sent Hugger-Gravitt an invoice for the balance of the amount owed.  Id. at ¶ 142.

Even though Hugger-Gravitt disputed the amount invoiced, believed that Ciox had not charged her correctly, and did not believe she should have been charged $91.21 for her medical records, she paid the invoice by check.  Id. at ¶¶ 144-146.  On her check she indicated that she was "Paying this bill under Protest." Id. at ¶ 145.  Her only explanation for voluntarily paying the invoice is that she wanted to avoid any collection attempts regarding the invoice.  Id.  at ¶ 146.

## C.    Named Plaintiff Beth Bretoi.

Named Plaintiff Bretoi alleges the following:  On or about February 26, 2016, she requested copies of her medical records from her medical provider, Allina Health to be provided in electronic form on CD in the Adobe Acrobat .pdf format.  Id. at ¶¶ 150-153.  Her medical records had been maintained by Allina Health in electronic form.  Id. at ¶ 156.  Like Hugger-Gravitt, with her request, Bretoi attached DHHS' publication "Individual Rights under HIPAA to Access their Health Information."  Id. at ¶ 173.

Allina Health contracted with Ciox to fulfill individual requests for medical records.  Id. at ¶ 157; See Exhibit 2(b) to motion to dismiss for lack of standing,   the IOD Incorporated Masters Services Agreement (the "Allina Health Contract" including the Business Associate Agreement).

On or about March 22, 2016, Ciox copied to a cd one .pdf file containing Bretoi's medical records, and mailed them to Bretoi's "third party designee." <u>Id</u>. at ¶¶ 161-162.  Ciox sent Bretoi an invoice for $241.28.  <u>Id</u>. at ¶¶ 166-169, 181. Bretoi alleges that the charges on the invoice did not meet the requirements of HIPAA, HITECH or the DHHS Access Guidance because she was not informed that her PHI was not maintained in electronic format, she was not informed there would be additional charges to produce her PHI in electronic format, she was charged a per page fee, the invoice did not calculate actual labor  costs, the invoice did not outline any average costs, and she was charged more than $6.50. <u>Id</u>. at ¶¶ 174-181.  After Bretoi received the invoice, she had her attorneys respond to the invoice by letter to inform Ciox that the charges were unreasonable and illegal, and specifically set forth why Bretoi believed the charges were unreasonable and illegal.  <u>Id</u>. at  ¶¶ 184-185, and Exhibit J to the Complaint (setting forth everything that Bretoi alleges Ciox did wrong with regard to charges for providing medical records).  Bretoi also sent a check for $6.50 to Ciox, which Ciox cashed.  <u>Id</u>. at ¶¶ 190-191.  Ciox sent a new invoice for the balance owed.  <u>Id</u>. at ¶ 191.  Thereafter, Bretoi's attorney sent Ciox another letter, providing a copy of DHHS' publication "Individual Rights under HIPAA to Access their Health Information." <u>Id</u>. at ¶¶ 192-193.  Ciox then sent follow up invoices to Bretoi.  <u>Id</u>. at  ¶ 196.

Even though Bretoi disputed the amount invoiced, believed Ciox had not charged her correctly, and did not believe that she should have been charged $241.28 for her medical records, she nonetheless paid the invoice by check.  Id. at ¶ 198.  Bretoi made a notation on her check that she was paying "under protest." Id. at ¶ 199.  Her only explanation for voluntarily paying the invoice is that she wanted to avoid any collection attempts regarding the invoice.  Id.  at ¶ 198.

### III.    ARGUMENT AND CITATION TO AUTHORITY

Each of the Plaintiffs' claims should be dismissed pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

**A.    The Voluntary Payments Doctrine Bars the Plaintiffs' Claims For Third-Party Breach of Contract (Count I), Unjust Enrichment (Count II), and Money Had and Received (Count III).**

The voluntary payments doctrine bars the Plaintiffs from recovering any of the payments that they made to Ciox, whether the Plaintiffs seek those amounts pursuant to their contract claim, unjust enrichment claim, or money had and received claim.[4]  Under the voluntary payments doctrine, when a payment is

---

[4]     Choice of law issues related to the named Plaintiffs' contractual claims are addressed in Ciox's motion to dismiss for lack of standing at note 7.   As for non-contractual claims, either the place of injury applies under the *lex loci delicti* conflicts of law analysis, or if "an injury is suffered out of state but no statute in that state is implicated, Georgia law applies to the claim provided that its application is consistent with due process. To determine whether application of Georgia law to class members is consistent with due process, 'the court must analyze whether the State of Georgia has 'significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff

made "where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party," payments are deemed voluntary and cannot be recovered by the payor.  See O.C.G.A. § 13-1-13;[5] Hanson v. Tele-Communications, Inc., 2000 WL 1376533, at *3 (Minn. Ct. App. Sept. 26, 2000) (Minnesota also recognizes the voluntary payments doctrine as a long standing doctrine of law "which clearly provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment.").

Here, each of the named Plaintiffs have alleged they knew *all of the facts and the law* related to what they contend Ciox should have charged them, and nonetheless, each Plaintiff voluntarily made the payments about which they now complain.  The named Plaintiffs allege that they should only have been charged

---

class, contacts creating state interests, in order to ensure that the choice of Georgia law is not arbitrary or unfair.'"  Auto. Leasing Corp. v. Mahindra & Mahindra, Ltd., 2014 WL 988871, at *4 (N.D. Ga. Mar. 14, 2014).  Here, each named Plaintiff is located in Minnesota, presumably that would be the "place of injury."  Nonetheless, Ciox has included Georgia and Minnesota law in this brief as the laws of both states are in accord as to the issues in this motion.

[5]    O.C.G.A. § 13-1-13 ("Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. *Filing a protest at the time of payment does not change the rule prescribed in this Code section*.") (emphasis added).

$6.50 for their medical records, Ciox overcharged them on their invoices, the Plaintiffs knew they were being overcharged at the time they received the invoices, and the Plaintiffs voluntarily paid the invoices even though they knew they were incorrect.  See Complaint at ¶¶ 71-91, 92-96 (setting forth what Kuchenmeister contends Ciox did wrong and that he paid anyway); 114-116, 120-140, 144-147 (setting forth what Hugger-Gravitt contends Ciox did wrong and that she paid anyway); 167, 184-185, 192-193, 198-200 (setting forth what Bretoi contends Ciox did wrong and that she paid anyway).   The named Plaintiffs unequivocally allege that they are not operating with misplaced confidence, and that they relied upon nothing that Ciox said in issuing its invoices.  Each of the named Plaintiffs specifically contends in the Complaint that they knew the charges were incorrect, but they paid them anyway while indicating they were doing so "under protest."  Id. at ¶¶ 93, 145, 199-200.[6]  In fact, the Plaintiffs specifically refer to their payments in the Complaint as "*voluntary* payments under protest."  Id. at ¶ 283 (emphasis added).

When a plaintiff pays an invoice with the knowledge that there was an overcharge in the invoice, or even where the plaintiff had the ability to discover

---

[6]      Id. at ¶¶ 93 ("In the memo line of check 2951, Plaintiff Kuchenmeister informed he was paying under protest."), 145 ("In the memo line of check 11935, Plaintiff Hugger-Gravitt informed she was "Paying this bill under Protest."), 199-200 ("In the memo line of check 1228, Plaintiff Bretoi informed she Paid under Protest.  She included with the payment statement id 1354888, hand writing 'Paid Under Protest!  I do not believe I owe this bill.'").

an overcharge, the voluntary payments doctrine prevents recovery of those overcharges.  See e.g., Fitzgerald Water, Light & Bond Comm'n v. Shaw Indus., Inc., 270 Ga. App. 68, 70 (2004) (holding that where the plaintiff paid its electrical bills upon receipt of invoices, and the plaintiff could have discovered the overcharges, the voluntary payments doctrine prevents recovery by the plaintiff on claims for breach of contract and money had and received.).  Here, the Plaintiffs' own allegations demonstrate that the Plaintiffs knew about an alleged overcharge, but paid it anyway.

The Plaintiffs specifically alleged that they paid the invoices "under protest,"  however, under both Georgia and Minnesota law, paying "under protest" does not affect the application of the voluntary payments doctrine.   In Georgia, the statute governing voluntary payments itself confirms that paying "under protest" is meaningless.  See O.C.G.A. § 13-1-13 (" . . . Filing a protest at the time of payment does not change [voluntary payments doctrine].");  Henson v. Columbus Bank & Trust Co., 144 Ga. App. 80, 83 (1977) ("even if the party at the time of making the payment should file a written protest, this does not make the payment involuntary.").  Minnesota case law has long been in accord.  See Shane v. City of St. Paul, 26 Minn. 542,546 (1880) (paying under protest is of no avail, unless the payment was made under duress).

Moreover, the Plaintiffs make no allegation that any payment was made under "duress" nor could they meet that threshold under the law.  In <u>Pew v. One Buckhead Loop Condo. Ass'n, Inc.</u>, 305 Ga. App. 456, 460–61 (2010), the court explained "duress" in the voluntary payment doctrine context: "a payment is not made under compulsion or duress, but will be treated as voluntary, unless the party making payment does so to prevent the immediate seizure of his goods or the arrest of his person . . . ."  <u>Id</u>.  <u>See also</u> <u>Fargusson v. Winslow</u>, 34 Minn. 384, 386 (Minn. 1885) (duress arises when one pays an amount "in order to recover possession of his personal property from another, who unjustly detains it.").

Here, the Plaintiffs have only alleged that they made the payment "to avoid collection attempts" for failure to pay the invoice.  <u>See</u> Complaint at ¶¶ 95, 146, 198.[7]  Such facts do not amount to "duress" under the law.  The Plaintiffs clearly alleged that they made their payments voluntarily and without duress, and thus the voluntary payments doctrine bars the Plaintiffs' claims for breach of contract, money had and received, and unjust enrichment.

---

[7]     Complaint at ¶¶ 95 ("Plaintiff Kuchenmeister payed [sic] Defendants' invoice to avoid collection attempts for failure to pay the at-issue invoice"); 146 ("Plaintiff Hugger-Gravitt payed [sic] Defendants' invoice to avoid collection attempts for failure to pay the at-issue invoice . . ."); 198 ("As a result of Defendants refusal to accept $6.50 for the copy of her PHI, and to avoid collection actions [Bretoi paid the invoice].").

**B.      Plaintiffs Fail to State a Claim for Unjust Enrichment (Count II) and Money Had and Received (Count III).**

In addition to the contracts between Ciox and Plaintiffs' medical providers, throughout the Complaint, the Plaintiffs admit the existence of an express contract between each Plaintiff and Ciox.  In particular, they allege that they ordered medical records, they received invoices from Ciox itemizing various fees charged by Ciox for its services providing medical records, that they received the medical records they ordered, and that the invoiced amount has been paid by each Plaintiff to receive the requested medical records.  See Complaint at ¶¶ 52, 63-65, 70-71, 88, 92-96 (for Kuchenmeister),  99-100, 110, 117-119, 144-146 (for Hugger-Gravitt),  150-153, 161-162, 166-167, 181, 198-200 (for Bretoi).   See Clow Corp. v. Metro Pipeline Co., 442 F. Supp. 583, 586 (N.D. Ga. 1977) (holding that a purchase order, along with the invoice, and the terms and conditions attached, was the contract).  In light of the existence of these admitted contracts, the Plaintiffs' quasi-contract claims of unjust enrichment and money had and received fail as a matter of law.

Under Georgia and Minnesota law, neither an unjust enrichment claim nor a money had and received can survive if a legal contract exists.  Georgia and Minnesota courts routinely hold that "[t]he theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." Tidikis v.

Network for Med. Commc'ns & Research LLC, 274 Ga. App. 807, 811, (2005)

(quoting Smith Serv. Oil Co. v. Parker, 250 Ga.App. 270 (2001) (same).  In Tidikis,

the court rejected an unjust enrichment claim and held "[h]ere, any benefit

conferred on the defendants was triggered by a provision in the contract . . .

Under the circumstances, the unjust enrichment claim fails as a matter of law."

274 Ga.App. at 811.  See also Sterling Capital Advisors, Inc. v. Herzog, 575

N.W.2d 121, 126 (Minn. Ct. App. 1998) ("The existence of an

express contract between the parties precludes recovery under the theories of

quasi-contract, unjust enrichment, or quantum meruit.").  Similarly, here, any

benefit or payment that Plaintiffs conferred on Ciox was triggered by a provision

in the contract - namely, the provisions in the invoice.  Accordingly, the

Plaintiffs' claim for unjust enrichment should be dismissed pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

Similar to a claim of unjust enrichment, a claim for money had and

received[8] only applies if there is no legal contact governing the issue.  See

Goldstein v. Home Depot U.S.A., Inc., 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009);

Baghdady v. Cent. Life Ins. Co., 224 Ga. App. 170, 171, (1996) (the theory of

---

[8]     The equitable theory of money had and received "is comprised of the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused."   Fernandez v. WebSingularity, Inc., 299 Ga.App. 11 (2009).

money had and received "applies only when there is no actual legal contract.");

Cappuccitti v. DirecTV, Inc., 623 F.3d 1118, 1127 (11th Cir. 2010) (a claim for

"money had and received  . . . exists only where there is no actual legal contract

governing the issue."); Renn v. Wendt, 185 Minn. 461, 241 N.W. 581 (1932) ("here

rights of parties in money or property are governed by valid contract, action

for money had and received does not lie.").

Accordingly, because the Plaintiffs admit that a contract exists here that

governs the payments made by and the benefit conferred by Plaintiffs, the claims

for unjust enrichment and money had and received cannot survive, and should

be dismissed.

**C.      Plaintiffs Fail to State a Claim for Fraud (Count IV) and Negligent
         Misrepresentation (Count V), and Fail to Meet the Requirements of
         Rule 9(b) of the Federal Rules of Civil Procedure.**

In general, fraud requires "five essential elements: a false representation,

scienter, inducement, reliance, and injury resulting from reliance on the false

representation."  Cox v. Bank of Am., N.A., 321 Ga. App. 806, 807 (2013); Johnson

v. GAPVT Motors, Inc., 292 Ga.App. 79, 82 (2008) (same); Marteins v. Minnesota

Min. & Mfg. Co., 616 N.W. 2d 732, 747 (Minn. 2000) (reciting the same elements

under Minnesota law).  Similarly, the elements for a claim of negligent

misrepresentation are "the defendant's negligent supply of false information to

foreseeable persons, known or unknown," "such persons' reasonable reliance

upon that false information," and "economic injury proximately resulting from such reliance." Liberty Capital, LLC v. First Chatham Bank, 338 Ga. App. 48, 54, (2016); Hardin Cty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd, 821 N.W.2d 184, 192 (Minn. 2012) (reciting similar elements under Minnesota law). The Plaintiffs here failed to articulate any false representation that was made by Ciox whatsoever, and specifically confirm in their allegations that they did not justifiably rely on any representation by Ciox.

### 1. The Plaintiffs' Complaint Does Not Allege *Any* False Statements Made by Ciox.

In support of its claim for fraud, the Plaintiffs do not allege that Ciox made any false statements whatsoever. Instead, Plaintiffs allege vaguely, and without reference to specific statements, that Ciox's "invoices were a misrepresentation, misleading statements, and based on deceptive practices since they charged Plaintiffs and class members in excess of $6.50 for those services." See Complaint at ¶ 279. The Plaintiffs do not actually identify *any* false statements - they just allege that Ciox included a charge for medical records that was violative of the requirements of HIPAA, and was higher than the Plaintiffs expected. Where a plaintiff has failed to allege a fraudulent statement, a claim for fraud, or negligent misrepresentation, the complaint should be dismissed. See Little v. Fleet Fin., 224 Ga. App. 498, 500, (1997) ("even if the averments in appellant's complaint are considered as true for the purposes of a motion to dismiss, she has

18

failed to demonstrate either that appellees made a false representation upon which she relied or that she was in any way injured by virtue of appellees' actions."); Next Century Commc'ns Corp. v. Ellis, 171 F. Supp. 2d 1374, 1380 (N.D. Ga. 2001) (granting motion to dismiss a fraud and negligent misrepresentation claim because the statements complained of were not demonstrably false.).

The amount that Ciox charged in its invoice was not a false statement or a misrepresentation - instead, it set forth the exact amount that Ciox was charging. Setting forth a charge in an invoice, even if that charge was incorrect, is not a "false or misleading" statement that can support a claim for fraud, and thus, the Plaintiffs' claims for fraud and negligent misrepresentation should be dismissed.

## 2. The Plaintiffs' Complaint Alleges that Plaintiffs Did Not Justifiably Rely Upon the Invoices.

In the Complaint, the Plaintiffs allege that they received their invoices, that they knew the invoices contained incorrect charges, and they paid them anyway. See Complaint at ¶¶ 71-91, 92-96 (setting forth what Kuchenmeister contends Ciox did wrong and that he paid anyway); 114-116, 120-140, 144-147 (setting forth what Hugger-Gravitt contends Ciox did wrong and that she paid anyway); 167, 184-185, 192-193, 198-200 (setting forth what Bretoi contends Ciox did wrong and that she paid anyway). Not only did Plaintiffs *not* justifiably rely on what was included in the invoice, each of the Plaintiffs specifically indicated to Ciox

19

that they were paying the invoices "under protest."  Accordingly, the Plaintiffs

cannot meet, and have not alleged, the "justifiable reliance" element of a fraud

and negligent misrepresentation claim.  A failure to allege facts sufficient to

support the justifiable reliance necessary for a fraud or negligence claim warrants

dismissal.  See Next Century Commc'ns Corp. v. Ellis, 214 F. Supp. 2d 1366, 1370

(N.D. Ga. 2002), aff'd, 318 F.3d 1023 (11th Cir. 2003) ("[J]ustifiable reliance is an

essential element to both fraud and negligent misrepresentation.  . . . [The]

Complaint, merely states the conclusion that plaintiff "reasonably" relied [on

statements] . . . [but] fails to allege facts sufficient to support the justifiable

reliance element of fraud or misrepresentation. This failure to plead justifiable

reliance requires dismissal of [p]laintiff's fraud and negligent misrepresentation

claim.").

### 3. Plaintiffs' Fraud Allegations Do Not Meet the Requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Moreover, the Plaintiffs have failed to meet the requirements for pleading

a fraud claim with particularity as set forth in Rule 9(b) of the Federal Rules of

Civil Procedure.  Under Rule 9(b) of the Federal Rules of Civil Procedure:

> a plaintiff must allege: (1) the precise statements, documents, or
> misrepresentations made; (2) the time, place, and person responsible for
> the statement(s); (3) the content and manner in which these statements
> misled the plaintiff; and (4) what the defendant gained by the alleged
> fraud.

Rivas v. Green Tree Servicing, LLC, 2013 WL 1213291, 5-6 (N.D. Ga. 2013). See also Williams v. Wells Fargo Bank, N.A., 2013 WL 1189500, 3 (N.D. Ga. 2013) ("To comply with Rule 9(b), plaintiff must plead "facts as to [the] time, place, and substance of [defendants'] alleged fraud, specifically the details of defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."). Pursuant to Rule 9 of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (fraud claimant must supply "precisely what statements were made, when, and by whom."). The complaint "need not include detailed factual allegations, but it must set forth 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Christman v. Walsh, 416 F.App'x 841, 844 (11th Cir. 2011). Id. (quoting Bell Atlantic Corporation v. Twombly, 550 U.S 544, 555 (2006)).

The Plaintiffs do not set forth *what* Ciox fraudulently represented, or *how* Plaintiffs supposedly relied upon any of the alleged representations or concealments, or *how* they sustained any alleged loss or damage *as the proximate result* of the representations made by Ciox. Thus, the Plaintiffs have simply not alleged a fraud claim that meets the requirements of Rule 9(b). For example, the Plaintiffs' only conclusory allegation as to how they relied upon the alleged

misrepresentations and concealments is that "Plaintiffs and class members relied on Defendants' invoices and paid them." <u>See</u> Complaint at ¶ 282. Moreover, the Plaintiffs only conclusory allegation as to how they sustained loss as a result of the alleged misrepresentations and concealments is that: "As a result of Defendants' false representations, Plaintiff and the class members have suffered damages." <u>See</u> Complaint at ¶ 287.

It is *not sufficient* under Rule 9(b) of the Federal Rules of Civil Procedure for Plaintiffs to merely assert that they justifiably relied to support their fraud claim, that Ciox is the cause of alleged damages, and that Plaintiffs were damaged. For example, in <u>McGee v. JP Morgan Chase Bank, NA</u>, 2013 WL 2321782 (11th Cir. 2013), the Eleventh Circuit held that where "justifiable reliance" is a necessary element for a claim to be asserted, it is not sufficient that a plaintiff merely assert that they "justifiable relied" upon a misleading statement. 2013 WL 2321782 at *2. Instead, the plaintiff must explain "the manner in which [the statements] misled the plaintiff." <u>Id</u>.

While the Complaint does not need to set forth detailed factual allegations on every point, it *must* do more than it has done here. The threadbare recitation of the reliance element is not sufficient. <u>Twombly</u>, 550 U.S. at 555; <u>McGee</u>, 2013 WL 2321782 at *2. The allegations in the Complaint do not come close to meeting the standard for Rule 9(b) of the Federal Rules of Civil Procedure.

**D.      Plaintiffs Fail to State a Claim Under the Georgia Fair Business Practices Act.**

Plaintiffs' claims under Georgia's Fair Business Practices Act, O.C.G.A. §

10-1-393 ("FBPA"), must be dismissed because they fail to state a claim under

Georgia law.  The FBPA deems "[u]nfair or deceptive acts or practices in the

conduct of consumer transactions and consumer acts or practices in trade or

commerce" as unlawful and a violation of the Act.  Under the FBPA, the elements

include a violation of the act, causation, and damages.  Zeeman v. Black, 156 Ga.

App. 82, 86–87, (1980).  Where a plaintiff argues the act was violated "as the

result of a misrepresentation" the plaintiff must also "demonstrate that he was

injured as the result of the reliance upon the alleged misrepresentation." Id.

**1.      The Plaintiffs' Claims Fall Under a Recognized and Fundamental Exception to the Georgia FBPA.**

Plaintiffs' FBPA claim must be dismissed because a federal regulatory

agency, the DHHS, regulates the actions or transactions at issue in the Plaintiffs'

Complaint.  By its express language, the FBPA excludes claims based upon

conduct that is regulated by a federal agency.  See O.C.G.A. § 10-1-396.[9]  In

interpreting this section of the FBPA, courts have repeatedly held that the FBPA

does not apply  "where the action or transaction at issue is authorized *or regulated*

---

[9]      O.C.G.A. § 10-1-396 of the FBPA provides that "Nothing in this part shall apply to: (1) Actions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States."  O.C.G.A. § 10-1-396.

*by a state or federal regulatory agency*." See Stewart v. Suntrust Mortgage, Inc., 331

Ga.App. 635, 639-40 (2015) (holding that the FBPA did not apply to mortgagors'

action against mortgagee for wrongful foreclosure because the mortgage

industry was regulated by the Georgia Residential Mortgage Act); Chancellor v.

Gateway Lincoln–Mercury, 233 Ga.App. 38, 45 (1998) ("the General Assembly

intended that the Georgia FBPA have a restricted application only to

the unregulated consumer marketplace and that FBPA not apply in regulated

areas of activity, because regulatory agencies provide protection or the ability to

protect against the known evils in the area of the agency's expertise."); James v.

Bank of Am., N.A., 332 Ga. App. 365, 369 (2015) (Dismissing claim for FBPA

based upon wrongful foreclosure because residential mortgage transactions are

regulated by both state and federal law, the FBPA does not apply.); Austin v.

Bank of America, 2012 WL 928732 (N.D. Ga. 2012) (because the area of mortgage

transactions is regulated by state and federal law, the FBPA does not apply to

residential mortgage transactions); In re Taylor, 292 B.R. 434, 436–37 (Bankr.

N.D. Ga. 2002) (dismissing FBPA claim and noting that "both in Georgia and in

the federal courts applying the Georgia statute, have construed the exemption to

cover conduct that is regulated, unless the FBPA or another statute provides

otherwise").  Accordingly, since DHHS regulates the activity surrounding

compliance with HIPAA,[10] the FBPA's exclusion applies, and the Plaintiffs' FBPA claim should be dismissed.

### 2.    The Plaintiffs Have Plead that They Did Not Rely.

The Plaintiffs attempt to base their FBPA claim on the existence of "dececptive and misleading invoices."  The Plaintiffs, however, have not alleged reliance on any alleged deceptive statements in the Ciox invoices, and instead, the complaint unequivocally confirms that the Plaintiffs *did not* rely upon any alleged misrepresentation about charges.  <u>See</u> section III(C)(2) above.

### E.    The Plaintiffs' Claims for Punitive Damages (Count VII) and Attorneys' Fees (Count VIII) Should be Dismissed.

Since as all Plaintiffs' substantive claims must be dismissed,  Plaintiffs' claims for punitive damages and attorneys' fees also fail as a matter of law and should also be dismissed.

### IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss all of Plaintiffs' claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Additionally, the Court should determine that Plaintiffs have failed to plead fraud with specificity as required by Rule 9(b) of the Fed. R. Civ. P.

---

[10]     <u>See</u> 42 U.S.C. § 1320d-5.  <u>See</u> <u>also</u> <u>Acara v. Banks</u>, 470 F.3d 569, 571 (5th Cir. 2006) ("HIPAA limits enforcement of the statute to the Secretary of Health and Human Services.").

This 1st Day of May, 2017.

/s/ Jennifer B. Dempsey, Esq.
William V. Custer, Esq.
Georgia Bar No. 202910
Jennifer B. Dempsey, Esq.
Georgia Bar No. 217536
Christian J. Bromley
Georgia Bar No. 206633

BRYAN CAVE LLP
One Atlantic Center, Fourteenth
Floor
1201 W. Peachtree St., N.W.
Atlanta, Georgia 30309
Telephone:  (404) 572-6600
Fax:         (404) 572-6999

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that I have this date filed the foregoing with the Clerk of Court using the CM/ECF system, which will send email notification of such filing to all counsel of record.

<u>/s/ Jennifer B. Dempsey</u>
Jennifer B. Dempsey
Georgia Bar No. 217536
Jennifer.Dempsey@bryancave.com
BRYAN CAVE LLP
One Atlantic Center – Fourteenth Floor
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Facsimile:    (404) 572-6999

*Counsel for Defendants*

27

## <u>LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE</u>

I certify that this pleading has been prepared with Book Antigua font, 13 point, as approved by the Court in L.R. 5.1(C), N.D. Ga.

Respectfully submitted, this 1st Day of May, 2017.

<u>/s/ Jennifer B. Dempsey</u>
Jennifer B. Dempsey
Georgia Bar No. 217536
Jennifer.Dempsey@bryancave.com
BRYAN CAVE LLP
One Atlantic Center – Fourteenth
Floor
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Facsimile:    (404) 572-6999

*Counsel for Defendants*
