UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Leon Kuchenmeister, Cindy A. Hugger-Gravitt, and Beth A. Bretoi, individually and on behalf of all those similarly situated, | ) ) ) ) | |
| | ) | Civil Action No. |
| Plaintiffs, | ) ) | 1:17-cv-01001-RWS |
| v. | ) ) | |
| HEALTHPORT TECHNOLOGIES, LLC, IOD INCORPORATED, AND CIOX HEALTH, LLC INDIVIDUALLY AND d/b/a IOD INCORPORATED AND HEALTHPORT TECHNOLOGIES, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR LACK OF STANDING, AND LACK OF SUBJECT MATTER JURISDICTION AND MEMORANDUM IN SUPPORT

COMES NOW Defendants HealthPort Technologies, LLC, IOD Incorporated, and Ciox Health, LLC, individually and d/b/a IOD Incorporated and HealthPort Technologies, LLC ("Ciox")[1] and hereby move to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the named Plaintiffs do not have standing to bring the claims they assert, and that this Court does not have subject matter jurisdiction to hear those claims.

## I.    INTRODUCTION

Plaintiffs are alleged to be three Minnesota residents who requested copies of their medical records from their healthcare providers.  Plaintiffs complain that the rates that Ciox charged them for these medical records are not in compliance with the Health Insurance Portability and Accountability Act ("HIPAA") or guidance about HIPAA disseminated by the Department of Health and Human Services (the "DHHS Access Guidance").  As such, the present case involves a transparent attempt by Plaintiffs to assert a private cause of action for damages under HIPAA and DHHS Access Guidance, a legal proposition that routinely has been rejected by the U.S. Congress, the DHHS, state courts in Georgia, and

---

[1]      In 2015, HealthPort Technologies, LLC and IOD Incorporated merged. Since that time, IOD Incorporated has ceased to exist and thus is not a proper party in this action.  Thereafter, HealthPort Technologies, LLC then changed its name to Ciox Health.

virtually every single U.S. federal court to consider the issue.  Since Plaintiffs have no private cause of action under HIPAA or the DHHS Access Guidance, the Plaintiffs do not have standing to bring their claims, there is no justiciable issue for this Court to resolve, and no subject matter upon which this Court may base jurisdiction.

Plaintiffs cleverly seek to avoid the substantial body of law that stands in the way of a private cause of action under HIPAA through a number of tactics. For instance, Plaintiffs contend that the alleged failure of Ciox to comply with HIPAA and the DHHS Access Guidance provides a basis for various common law causes of action in Georgia, such as third-party breach of contract, money had and received, unjust enrichment, and a claim under the Georgia Fair Business Practices Act ("GFBPA").  This unabashed effort to elevate form over substance, however, by applying different labels to their claim seeking a private remedy under HIPAA and the DHHS Access Guidance, cannot create such a cause of action where none exists.  Other courts have been quick to find as much.[2]

---

[2]    See e.g., Miller v. Chasse Home Fin., LLC, 2011 WL 10944693, at *6 (N.D. Ga. Oct. 6, 2011), aff'd, 677 F.3d 1113 (11th Cir. 2012) ("where the statute that allegedly was violated did not provide a cause of action for damages, the plaintiff could not recover damages based on a negligence theory") (citations omitted); Brush v. Miami Beach Healthcare Grp., 2017 WL 1325534, at *6 (S.D.Fla. Feb. 17, 2017)("Plaintiff cannot manipulate the common law to state a private, statutory cause of action where none exists.").

Additionally, Plaintiffs do not have standing to assert their claims for breach of contract because they are neither parties to nor third-party beneficiaries of the contracts at issue.

## II.   STATEMENT OF RELEVANT FACTS

Ciox incorporates its statement of relevant facts included in its motion to dismiss for failure to state a claim filed contemporaneously herewith. Additionally, the following undisputed facts are relevant to the present motion.

**A.   A Brief Summary of HIPAA and the Privacy Rule.**

A brief summary of the relevant provisions of HIPAA, 2 U.S.C. § 1181, et seq. and 42 U.S.C. § 1320d, et seq., and its evolution, are useful to understand the core issues raised in the Plaintiffs' complaint.  The parties subject to HIPAA generally can be broken down into "Covered Entities," such as the hospitals and clinics that maintained the Plaintiffs' medical records, and "Business Associates," such as Ciox, which contract to work for a Covered Entity.  The DHHS and its Office of Civil Rights ("OCR") are charged expressly by the terms of HIPAA with enforcing its provisions.  42 U.S.C. § 1320d-5.

The disclosure of medical records, defined by HIPAA as "protected health information" ("PHI"), is governed by the "Privacy Rule" which was promulgated by DHHS in 2000.  45 C.F.R. Part 160 and Part 164, Subparts A and E.  The Privacy Rule generally grants patients the right to obtain copies of their own PHI

for a "reasonable, cost-based fee." 45 C.F.R. § 164.524.  In its preamble to the 2000

Final Privacy Rule, however, DHHS expressly prohibited Covered Entities from

recouping certain items of labor (e.g. locating and retrieving responsive PHI ) in

the fee that they charged patients for copies of their medical records ("the patient

rate").  See Standards for Privacy of Individually Identifiable Health Information,

65 Fed. Reg. 82462, 82667 (Dec. 28, 2000) ("2000 Final Rule").  Because this patient

rate does not include all costs that a Covered Entity must incur, it is essentially a

below-cost rate.

        In contrast to the patient's request for copies *of their own PHI*, the Privacy

Rule did not regulate the fees that Covered Entities could recoup for producing

copies of PHI to third parties, such as lawyers and insurers.  These third parties,

of course, frequently seek copies of the patient's records through a written

HIPAA authorization from the patient for use in tort litigation or to resolve an

insurance claim.  The Privacy Rule did not cover these requests.  See Standards

for Privacy of Individually Identifiable Health Information, 67 Fed. Reg. 53182,

53254 (Aug. 14, 2002).  ("The fee limitations in 45 C.F.R. § 164.524(c)(4) do not

apply to any other permissible disclosures by the Covered Entity . . . [or]

disclosures that are based on an individual's authorization that is valid under 45

C.F.R. § 164.508 . . . .").  Instead, under the Privacy Rule, Covered Entities and

Business Associates could charge for providing such copies according to state

4

statutes, regulations or fee schedules, which have long governed disclosures of medical records in nearly every state. 65 Fed. Reg. at 82557 ("[w]e do not intend to affect the fees that Covered Entities charge for providing protected health information to anyone other than the individual."). Under the Privacy Rule, rates allowed under state law were "presumed reasonable." Id. For instance, Georgia provides limits on such fees through statutory provisions at O.C.G.A. § 31-33-3.

Congress later amended certain portions of the Privacy Rule in Section D of the Health Information Technology for Economic and Clinical Health Act of 2009 (the "HITECH Act"), codified at 42 U.S.C. § 300jj et. seq. and 42 U.S.C. § 17921, et seq. Through the HITECH Act, Congress sought to make electronic medical records more easily accessible to patients. In that legislation, Congress mandated that Covered Entities honor a patient's request to directly transmit PHI to third parties *only* when such PHI was used or maintained in a Congressionally-defined "Electronic Health Record" ("EHR"). See 42 U.S.C. § 17395(e)(1); see also 42 U.S.C. § 17921(5). This limited amendment to the Privacy Rule was consistent with the purposes of the HITECH Act—to spur the adoption of a nationwide health IT infrastructure that would support the rapid and secure exchange of certain subsets of PHI electronically among health care providers and patients. Id.

5

On January 25, 2013, and allegedly pursuant to the HITECH Act, DHHS purported to create a new category of request for PHI, which it called a "third-party directive." DHHS described this new category as an extension of an individual's right to access his or her own PHI. This new form of request created by DHHS required Covered Entities to honor a patient's request to physically send or electronically transmit any or all of a patient's PHI, in any form whatsoever (e.g. paper, electronic, radiologic film), to any third party of the patient's choosing; and, to do so at the below-cost patient rate. See 45 C.F.R. § 164.524(c)(3)(ii). See also Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules Under the Health Information Technology for Economic and Clinical Health Act and the Genetic Information Nondiscrimination Act; Other Modifications to the HIPAA Rules, 78 Fed. Reg. 5566, 5634-35 (Jan. 25, 2013) ("2013 Omnibus Rule").

On February 25, 2016, three years after creating the "third-party directive," and without notice or an opportunity for public comment, DHHS issued substantive modifications to the Privacy Rule under the guise of "FAQs on Access" that were simply posted on the DHHS public website that day. See http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/, attached at Exhibit 3. Among other significant changes, the DHHS Access Guidance required Covered Entities for the first time to use one of three

options to calculate the patient rate: (1) "actual cost," (2) "average cost," and (3) a "flat fee not to exceed $6.50" for producing electronic copies of electronic records.

The DHHS Access Guidance also forced Covered Entities and Business Associates to recoup even lower below-cost fees for fulfilling individual requests for PHI than those DHHS had previously allowed in the patient rate. The DHHS Access Guidance also explicitly mandated, for the first time, that the patient rate applied to "third-party directives" when a Covered Entity sent PHI to a third party for purposes unrelated to providing or coordinating patient care. Finally, the DHHS Access Guidance required, for the first time, that Covered Entities notify patients, in advance of fulfilling a request or "third-party directive," of the approximate cost to provide the requested PHI.

Following the issuance of these new rules by DHHS, members of both houses of Congress along with Ciox questioned the enforceability and advisability of the new DHHS Access Guidance. While the OCR clarified some of its DHHS Access Guidance in response to these questions, the OCR largely refused to modify the significant issues raised by CIOX and Congress. Nonetheless, the OCR did agree to delay enforcement of the DHHS Access Guidance for a period of 180 days from the issuance date of the DHHS Access Guidance – until August 23, 2016 – a time that was *after* the requests for records

were made by the Plaintiffs in this action and *after* CIOX had responded to them.[3]
See Letter from Jocelyn Samuels, Director, Office of Civil Rights of HHS dated
June 8, 2016 attached hereto as Exhibit 1.  Thus, while Plaintiffs contend that the
DHHS Access Guidance controlled the manner in which CIOX responded to
their requests and the charges imposed upon them, the Agency that actually
propounded the DHHS Access Guidelines took a slightly different view.  While
not relevant to this motion, Ciox has continued to advocate for changes to the
DHHS Access Guidance since August 23, 2016 and has endeavored, along with
others in the industry to comply with the terms of the DHHS Access Guidance
since that date.

**B.      The Contracts Between Ciox and The Plaintiffs' Healthcare Providers.**

**1.      Leon Kuchenmeister.**

Plaintiff Leon Kuchenmeister alleges that his healthcare provider, Health
Partners Clinics, contracted with Ciox to fulfill individual requests for medical

---

[3]      Plaintiff Kuchenmeister made his request on or about July 27, 2016, his
records were provided on or about August 10, 2016, and he received his invoice
on or about August 11, 2016.   Complaint at ¶¶52, 65, 70.  Plaintiff Hunter-Gravitt
made her request on or about June 6, 2016, received her records on or about June
27, 2016, and received her original invoice on or about June 28, 2016.  Id. at ¶¶ 99,
110, 117.  Plaintiff Bretoi made her request on or about February 26, 2016,
received her records on or about March 22, 2016, and received her original
invoice on or about March 22, 2016.  Id. at ¶¶ 150, 161, 166.

records.  Id. at ¶ 59.[4]  The contract between HealthPartners and HealthPort, now

Ciox, (the "HealthPartners Contract"), and specifically, the attached Business

Associate Agreement provides, in part:

> **No Third Party Beneficiary.**  This BAA confers no enforceable legal right
> or remedy on any individual or entity other than the parties, unless
> otherwise expressly provided.

See Exhibit 2(a) attached hereto, the Agreement for Services between HealthPort,

now Ciox, and HealthPartners (the "HealthPartners Contract") at the Business

Associate Agreement at ¶ 6.4.  Additionally, the HealthPartners Contract, and

specifically, the Business Associate Agreement, provides that it is governed by

and interpreted under Minnesota law.  Id. at ¶ 6.8.

---

[4]     Ciox attaches its contracts with Health Partners Clinics, Allina Health, and
HealthEast at Exhibit 2 hereto since Plaintiffs referred to those contracts in their
Complaint and has asserted a third-party breach of contract claim based upon
those contracts.  See Complaint at ¶¶ 59,106-108, and 157.  "[W]here the plaintiff
refers to certain documents in the complaint and those documents are central to
the plaintiff's claim, then the Court may consider the documents part of the
pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching
such documents to the motion to dismiss will not require conversion of the
motion into a motion for summary judgment."  See Brooks v. Blue Cross and
Blue Shield of Florida, Inc., 116 F.3d 1364 (11th Cir. 1997) Ray v. Bank of Am.,
N.A., No. 1:14-CV-2153-AT, 2015 WL 11256939, at *2 (N.D. Ga. July 28, 2015)
(same).  Additionally, because this is a motion to dismiss for lack of standing
brought pursuant to Rule 12(b)(1), this motion does not convert to a motion for
summary judgment merely because the court looks beyond the pleadings.  See
Bischoff v. Osceola Cty., Fla., 222 F.3d 874, 878 (11th Cir. 2000).

2.     **Beth Bretoi.**

Plaintiff Bretoi alleges that her healthcare provider, Allina Health,

contracted with Ciox to fulfill individual requests for medical records.

Complaint at ¶ 157.  The contract between Allina Health and IOD, now Ciox, (the

"Allina Health Agreement"), and specifically, the attached Business Associate

Agreement, provides in part:

> This Agreement inures to the benefit of the parties hereto and each Allina
> affiliate to or on behalf of which [Ciox] provides the Services, *but not to
> the benefit of any other third party.*

See Exhibit 2(b) attached hereto, Allina Health Contract at the Business Associate

Agreement at ¶ 8 (emphasis added).  The Allina Health Contract originally was

entered into between Allina Health System d/b/a Allina Health, a Minnesota

corporation, and IOD Incorporated, a Wisconsin Corporation and predecessor of

Ciox, and refers to Minnesota law.  Id. at ¶ 6.3.

3.     **Cindy A. Hugger-Gravitt.**

Plaintiff Hugger-Gravitt alleges that her healthcare provider,  HealthEast

Hospitals and Clinics, contracted with Ciox to fulfill individual requests for

medical records.  Complaint at ¶¶ 106-108.  The contract between HealthEast and

CM Information Specialists, now Ciox, (the "HealthEast Contract"), and

specifically, the attached Business Associate Addendum, provides, in part:

> Nothing in this Addendum shall be construed to create any third party
> beneficiary rights in any person.

See Exhibit 2(c) attached hereto the HealthEast Contract at the Business Associate Addendum) at ¶ 4.2.  The HealthEast Contract was originally entered into by two Minnesota residents.

## C.    The Plaintiffs' Claims.

Plaintiffs have asserted many separate causes of action, each and every one of which is based upon Plaintiffs' position that they have a private right of action under HIPAA and the DHHS Access Guidance.  Specifically,

- Count I asserts a claim for third-party beneficiary breach of contract, alleging that Ciox violated contracts entered into between Ciox and the Plaintiffs' healthcare providers by violating HIPAA and the DHHS Access Guidance.  See Complaint at ¶¶ 219-233.

- Count II asserts a claim for unjust enrichment, alleging that Ciox was unjustly enriched because it violated HIPAA and instead, should have charged rates for copies set forth in HIPAA and the DHHS Access Guidance.  Id. at ¶¶ 234-253.

- Count III asserts a claim for money had and received seeking the return of amounts paid over and above rates set forth in HIPAA and in the DHHS Access Guidance.  Id. at ¶¶ 254-271.

- Counts IV and V assert claims for fraud and negligent misrepresentation alleging that Ciox fraudulently charged over and above rates set forth in

11

HIPAA and in the DHS Access Guidance. Id. at ¶¶ 272-305.

- Count VI asserts a claim under the Georgia Fair Business Practices Act , based upon Ciox charging rates other than those set forth in HIPAA and in the DHHS Access Guidance. Id. at ¶¶ 306-341.

- Count VII asserts a claim for punitive damages, and Count VIII asserts a claim for attorneys' fees based upon the above claims. Id. at ¶¶ 342-347.

Accordingly, each and every one of the claims asserted by the named Plaintiffs in this purported class action is premised upon, and hinges entirely upon, the provisions of HIPAA and the DHHS Access Guidance.

## III.    ARGUMENT AND CITATION TO AUTHORITY

### A.    There is No Private Right of Action Under HIPAA.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Wooden v. Board of Regents, 247 F.3d 1262, 1273-1274 (11th Cir.2001) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Where a plaintiff does not have a private right of action to assert its claims, the plaintiff does not have standing to assert those claims. Here, Plaintiffs have no private right of action under HIPAA, let alone under the DHHS Access Guidance. Thus, they have no standing to assert their claims, they have failed to state any claims, and this Court does not have subject matter jurisdiction to hear those claims. See

e.g., Murungi v. Touro Infirmary, 2012 WL 1014811, at *1 (E.D. La. Mar. 21, 2012) ("No private right of action exists under HIPAA or the FDCA; therefore, Plaintiff lacks standing to bring these claims, and the Court dismisses them for lack of subject-matter jurisdiction."); Anderson v. Deutsche Bank Nat. Trust Co., 2012 WL 3756512, at *12 (N.D. Ga. Aug. 6, 2012), report and recommendation adopted, 2012 WL 3756435 (N.D. Ga. Aug. 27, 2012) (where no private right of action exists under a statute, the plaintiff lacks standing to pursue that claim).

It is now settled beyond question that HIPAA does not create a private right of action and therefore the Plaintiffs do not have standing to assert such a claim under HIPAA.   See 65 Fed. Reg. 82601 (Dec. 28, 2000) ("Under HIPAA, individuals do not have a right to court action."); Crawford v. City of Tampa, 397 F. App'x 621, 623 (11th Cir. 2010) ("we agree that no private right of action exists under [HIPAA]."); Bradley v. Pfizer, Inc., 440 F. App'x 805, 809 (11th Cir. 2011) (same); Sneed v. Pan Am. Hosp., 370 F. App'x 47, 50 (11th Cir. 2010) (declining "to hold that HIPAA creates [either] a private cause of action ... or rights that are enforceable through [42 U.S.C.] § 1983."); Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006) (same and citing 42 U.S.C. §§ 1320d–1 to d-7); Hudes v. Aetna Life Ins. Co., 806 F.Supp.2d 180, 196 (D.D.C. 2011) ("In light of the statutory language of § 1320d-5 and the apparent consensus among the courts that have considered the question, this Court finds that Plaintiff has no private

13

HIPAA right of action."), aff'd, 493 Fed.Appx. 107 (D.C.Cir.2012); Henderson v. Borough of Baldwin, 2016 WL 5106945 at *6 (W.D. Pa. Sept. 20, 2016) ("every other federal court to address [the subject] has determined that there is no private right of action under HIPAA.").

Furthermore, courts in Georgia, Minnesota and elsewhere have similarly prohibited creative efforts by claimants seeking to pursue causes of action under state law predicated upon HIPAA, whether based on fraud, breach of contract, unjust enrichment, or otherwise.   See e.g., Bradley v. Pfiser, 440 Fed. Appx. 805, 809 (11th Cir. 2011) (affirming a motion for summary judgment and holding that because there is no private right of action under HIPAA, a claim for invasion of privacy under Georgia law failed); Buttacavoli v. Owen, Gleaton, Egan, Jones & Sweeney, 331 Ga. App. 88 (2015) (Claimant "cannot proceed with her state law invasion of privacy claim based on violations of [HIPAA] because there is no private cause of action under HIPAA."); Brush v. Miami Beach Healthcare Grp., 2017 WL 1325534, at *6 (S.D. Fla. Feb. 17, 2017) (dismissing breach of contract claim predicated on HIPAA violation because HIPAA provides no right of action); Weinberg v. Advanced Data Processing, Inc., 2015 WL 8098555, at *4 (S.D. Fla. Nov. 17, 2015) (finding that plaintiff could not state private cause of action pursuant to common law doctrine of negligence per se based on alleged violation of HIPAA because HIPPA provides no private right of action);

14

<u>Hills v. Praxair, Inc.</u>, 2012 WL 1935207, *19 (W.D.N.Y., May 29, 2012) (dismissing claim alleging fraud founded on violations of HIPAA because HIPAA provides no private right of action); <u>Espinoza v. Gold Cross Servs., Inc.</u>, 234 P.3d 156, 158-159 (Utah Ct. App. 2010)(dismissing unjust enrichment claim based upon alleged HIPAA violation because there is no private cause of action under HIPAA); <u>Smith v. Britton</u>, 2014 WL 349742, at *3 (Minn. Ct. App. Feb. 3, 2014) ("there is no private cause of action under HIPAA" for violation of claimant's privacy rights).

Moreover, the DHHS Access Guidance upon which Plaintiffs rely is merely a non-regulatory website posting of answers to frequently asked questions ("FAQs") prepared and published by DHHS on its website.  The posting came with no notice of rulemaking, no publication in the Federal Register, and no comment period as required for a binding regulation under the Administrative Procedures Act.  <u>See</u> 5 U.S.C. § 553(b).  Nonetheless, even if the DHHS Access Guidance was enforceable as law, no private right of action is created for the Plaintiffs under the DHHS Access Guidance.  The DHHS made its intent clear in issuing the guidance, by noting that OCR, and not individuals, will have the right to "take enforcement action where necessary."  <u>See</u> http://www.hhs.gov/hipaa/for-professionals/privacy/ guidance/access; at Exhibit 3 attached hereto.  In fact, no one -- not even OCR -- was enforcing the DHHS Access Guidance during the time the Plaintiffs

requested medical records, received records, and were originally invoiced for the records. See supra, n. 2. Any enforcement by OCR of the DHHS Access Guidance was suspended from the issuance date of the DHHS Access Guidance until August 23, 2016. See Exhibit 1 attached hereto.

Accordingly, Plaintiffs do not have a private right of action to bring a claim that CIOX violated HIPAA under any of its many theories. Because each and every one of Plaintiffs' claims in this case is premised upon a private right of action under HIPAA, Plaintiffs do not have standing to assert their claims and their claims should therefore be dismissed.

**B.   Congress Intended For the Secretary of Health and Human Services, and not the Courts, to Have Jurisdiction Over Enforcement of HIPAA.**

All the courts that have considered the issue have concluded that Congress intended for the Secretary of Health and Human Services, and not the courts, to have jurisdiction over enforcement of HIPAA. See 42 U.S.C. § 1320d-5. See also Acara, 470 F.3d at 571 ("HIPAA limits enforcement of the statute to the Secretary of Health and Human Services.")[5]; Caskey v. Shriners Hosps. for Children, 2016 WL 4367250, at *4 (E.D. Wash. Aug. 15, 2016) ( "The attempt to use the two HIPAA references to establish federal jurisdiction is a reach-around of

---

[5]   The statute later was amended to permit certain enforcement actions by state attorneys general. 42 U.S.C.A. § 1320d-5(d) (West) (amended Pub.L. 111-5, Div. A, Title XIII, § 13410 Feb. 17, 2009, 123 Stat. 271, 273, 274.).

congressional intent because there is great significance in the 'congressional determination to preclude federal private remedies.'") (citing Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 814 (1986)); Jackson v. Mercy Behavioral Health, 2015 WL 401645, at *3 (W.D. Pa. Jan. 28, 2015) ("The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens."); Sheppard v. Johnson, 2011 WL 5547129, at *3 (N.D. Fla. Oct. 14, 2011), report and recommendation adopted, 2011 WL 5547122 (N.D. Fla. Nov. 15, 2011) ("provisions of HIPAA may only be enforced by the Secretary of Health and Human Services.  As plaintiff is a private actor, he may not allege a violation of the Act."); Johnson v. Quander, 370 F. Supp. 2d 79, 100 (D.D.C. 2005) aff'd, 440 F.3d 489 (D.C. Cir. 2006) (noting that the Secretary of Health and Human Services was empowered to enforce HIPAA, and "[a]ccordingly, because no private right of action exists under the HIPAA, this Court does not have subject matter jurisdiction over this claim and it must be dismissed.").  The district court for the District of Columbia recently described the options available to a complainant under HIPAA in the following way:

> [A]n individual's 'only redress for an alleged HIPAA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, which has the discretion to investigate the complaint and impose sanctions, both civil and criminal.'

Brown v. Hill, 174 F. Supp. 3d 66, 71 (D.D.C. 2016) (quoting Johnson v. Kuehne &
Nagel Inc., 2012 WL 1022939, at *5 (W.D.Tenn. Mar. 26, 2012) (citing 45 C.F.R. §
160.306); and citing Royce v. Veterans Affairs Regional Office, 2009 WL 1904332,
at *6 (D. Colo. July 1, 2009) (noting that "HIPAA expressly provides the penalties
for improper disclosures of medical information ... and limits enforcement to the
Secretary of HHS").

Moreover, not only is the Secretary of DHHS charged with the jurisdiction
to enforce HIPAA, the DHHS has been actively enforcing the HIPAA provisions
and addressing complaints under HIPAA since its inception. The efforts of the
Office of Civil Rights to respond to complaints and enforce HIPAA, both as a
civil and criminal matter, are recounted in great detail at the web site for the
DHHS.[6]

As a matter of separation of powers, this Court is required to defer to the
DHHS where Congress has expressly assigned to it the responsibility for
enforcement of these laws.  See Hardison v. Cohen, 375 F.3d 1262, 1265 (11th Cir.
2004) ("under 'this country's long-respected separation of powers doctrine, courts
should be hesitant to provide an aggrieved plaintiff with a remedy where

---

[6]     The DHHS website, visited April 4, 2017, can be found at the following
address: http://www.hhs.gov/ocr/privacy/hipaa/enforcement/highlights/
index.html (a summary of which is attached hereto as Exhibit 4).

Congress intentionally has withheld one.'")(quoting Lee v. Hughes, 145 F.3d 1272, 1276 (11th Cir. 1998).

Accordingly, this Court simply lacks jurisdiction to enforce the provisions of HIPAA as Plaintiffs have requested in this action, and their claims should therefore be dismissed.

## C.   Plaintiffs Do Not Have Standing to Pursue Their Third-Party Beneficiary Breach of Contract Claims

The named Plaintiffs each argue that they are the intended beneficiaries of the contracts entered into between Ciox and the Plaintiffs' healthcare providers, and that those contracts were breached by Ciox for their violations of HIPAA and the DHHS Access Guidance.  See Complaint at ¶¶ 225-230.  The Plaintiffs however, were never intended to be third-party beneficiaries of those contracts, and thus, they do not have standing to bring claims for breach of those contracts.

Under Georgia or Minnesota law,[7] when the signatories of a contract clearly did not intend a third-party to benefit from the contract, the third-party

---

[7]    The HealthPartners Contract provides that it is to be governed by Minnesota law.  Accordingly, Minnesota law applies to the named Plaintiff Kuchenmeister's third-party contractual claims under the Health Partners Contract.  See BP Lubricants USA Inc. v. Glob. Saturn, Inc., 2007 WL 1589566, at *2 (N.D. Ga. June 1, 2007) ("Georgia courts have consistently held that choice of law provisions contracted by parties are enforceable and apply to both a contract's construction and its remedy.") (citing Carr v. Kupfer, 296 S.E.2d 560, 562 (Ga. 1982) ("Absent a contrary public policy, this court will normally enforce a contractual choice of law clause.").  The Allina Health Contract refers to Minnesota law, but does not specifically state what state's law applies to the

does not have standing to bring a claim to enforce its provisions.  See O.C.G.A.

§ 9-2-20; Am. Fletcher Mortgage Co., Inc. v. First Am. Inv. Corp., 463 F.Supp. 186,

195 (N.D. Ga.) (Under Georgia law, "it must [c]learly appear from the contract

that it was intended for his benefit.  The mere fact that he would benefit from

performance of the agreement is not alone sufficient."); Buchanan Plumbing Co.,

Inc. v. Regents of the Univ. of Minnesota, 298 Minn. 328, 334 (1974) (Under

Minnesota law, the court must examine whether the terms of the contract

provide that the purpose is for the third-party to be benefitted).

Courts in both Georgia and Minnesota both look to the language included

in the contract to determine the intent of the parties, and to determine whether

the parties intended any third-parties to be beneficiaries of the contracts.  See

e.g., Buchman Plumbing Co. v. Regents of the Univ. of Minnesota, 298 Minn. 328,

334, 215 N.W.2d 479, 483 (1974) ("[a]lthough we have constantly been willing to

give full force and effect to the rights of third-party beneficiaries, we have always

required as a prerequisite some expression of intent on the part of the contracting

parties that the person asserting such rights is to be a beneficiary of that

---

contract.  The HealthEast Contract does not specify what state's law applies to
that contract but it is entered into between two Minnesota residents.  Since the
current parties to these contracts are all located in Georgia and Minnesota,
presumably the law applicable to the claims under these contracts will be either
Georgia or Minnesota.  Ciox has included both Georgia and Minnesota law in
this brief as the laws of both states are in full accord as to whether and when a
party is a third-party beneficiary of a contract.

contract"); <u>Hennen Const. Co. v. Pilot Land Dev.</u>, 2002 WL 31689378, at *2 (Minn. Ct. App. Dec. 3, 2002) (When applying the "intent to benefit" test, courts "give effect to the intention of the parties as expressed in the language contained in the contract as a whole.");[8] <u>Carolina Cas. Ins. Co. v. R.L. Brown & Assocs., Inc.</u>, 2006 WL 211718, at *3 (N.D. Ga. Jan. 25, 2006) (Tidwell) ("[F]or a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. . . . The intention must be shown on the face of the contract.").

Here, the three contracts between Ciox and the Plaintiffs' healthcare providers expressly provide that *no third party is intended to benefit from the contracts*, and that no remedy or enforceable legal right is conferred upon any third-party to the contracts. <u>See</u> Exhibit 2(a) attached hereto at ¶ 6.4, and Exhibit 2(b) attached hereto at ¶ 8, and Exhibit 2(c) attached hereto at ¶ 4.2. Courts are in accord that where a contract specifically states that there are no third party

---

[8]     Under Minnesota law, for one to be an intended beneficiary entitled to recover under a contract, they must meet either the 'duty-owed' test or the 'intended-beneficiary' test." <u>Caldas v. Affordable Granite & Stone, Inc.</u>, 2011 WL 1938307, at *2 (Minn. Ct. App. May 23, 2011), <u>aff'd</u>, 820 N.W.2d 826 (Minn. 2012). The "duty owed" test requires that "performance of the [contractual] promise will satisfy an obligation of the promisee to pay money to the beneficiary." Clearly that is not the circumstance outlined in the Complaint, and thus the plaintiffs do not meet the "duty owed" test. <u>Id.</u> at *2.

beneficiaries to that contract, the parties clearly do not intend for third party claims to be asserted, and thus, any third party claim for breach of contract is prohibited. See e.g.,  In Eleria v. City of St. Paul, 2010 WL 5293742, at *7 (Minn. Ct. App. Dec. 28, 2010), the court rejected an argument that a plaintiff was a third-party beneficiary of the contract, where the contract did "not express any intent of either party to benefit" that third-party."  The court noted, "[r]ather, the contract specifically provides, in relevant part:

> [N]othing in or under this Agreement shall be construed to give any rights or benefits of this Agreement to anyone other than City or CNA, and all duties and responsibilities undertaken pursuant to this Agreement shall be for the sole and exclusive benefit of City and CNA and not for the benefit of any other party.

Id. at *6-7.  See also Russo v. NCS Pearson, Inc., 462 F. Supp. 2d 981, 1000 (D. Minn. 2006) (holding that the plaintiff was not a third party beneficiary of the contract at issue where the contract explicitly provided that "[n]o provision of this Agreement shall in any way inure to the benefit of any third person,"); Carolina Cas. Ins. Co., 2006 WL 211718 (N.D. Ga. 2006) (granting motion to dismiss purported third-party plaintiff's claims where the contract stated that the plaintiff was "not a third party beneficiary of any agreement by and between Owner and ... Contractor.").

## IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' claims for

lack of standing and lack of subject matter jurisdiction pursuant to Rule 12(b)(1)

of the Federal Rules of Civil Procedure.

This 1st Day of May, 2017.

/s/ Jennifer B. Dempsey, Esq.
William V. Custer, Esq.
Georgia Bar No. 202910
Jennifer B. Dempsey, Esq.
Georgia Bar No. 217536
Christian J. Bromley
Georgia Bar No. 206633

BRYAN CAVE LLP
One Atlantic Center, Fourteenth
Floor
1201 W. Peachtree St., N.W.
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Fax:         (404) 572-6999
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that I have this date filed the foregoing with the Clerk of Court using the CM/ECF system, which will send email notification of such filing to all counsel of record.

/s/ Jennifer B. Dempsey
Jennifer B. Dempsey
Georgia Bar No. 217536
Jennifer.Dempsey@bryancave.com
BRYAN CAVE LLP
One Atlantic Center – Fourteenth Floor
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Facsimile:    (404) 572-6999

*Counsel for Defendants*

## <u>LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE</u>

I certify that this pleading has been prepared with Book Antigua font, 13 point, as approved by the Court in L.R. 5.1(C), N.D. Ga.

Respectfully submitted, this 1st Day of May, 2017.

<u>/s/ Jennifer B. Dempsey</u>
Jennifer B. Dempsey
Georgia Bar No. 217536
Jennifer.Dempsey@bryancave.com
BRYAN CAVE LLP
One Atlantic Center – Fourteenth Floor
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone:   (404) 572-6600
Facsimile:    (404) 572-6999

*Counsel for Defendants*