IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LEON KUCHENMEISTER, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : CIVIL ACTION NO. |
| | : 1:17-CV-1001-RWS |
| HEALTHPORT | : |
| TECHNOLOGIES, LLC, et al., | : |
| | : |
| Defendants. | : |

**ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b) [Doc. No. 18] and Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) [Doc. No. 19].

**I.   Factual Background**

Defendant Ciox Health, LLC[1] contracts with hospitals, health systems, physician practices, and clinics to process and fulfill medical records requests. Ciox provides these services to numerous healthcare providers and processes tens of thousands of requests for medical records each day. When providing copies of

---

[1] In 2015, Defendants Healthport Technologies, LLC and IOD Incorporated merged. Thereafter, HealthPort Technologies changed its name to Ciox Health, LLC, which will be referred to as "Ciox" hereafter.

AO 72A
(Rev.8/82)

medical records that are requested, Ciox is governed by a variety of state and federal statutes and regulations, including the Health Insurance Portability and Accountability Act ("HIPAA") and the Health Information Technology for Economic and Clinical Health Act of 2009 ("HITECH") in certain circumstances.

Named Plaintiffs requested copies of medical records from their healthcare providers. The hospitals or healthcare providers from whom the records were requested have contracts with Ciox to fulfill medical records requests made to them. Plaintiffs contend that Ciox charged for those medical records in excess of the charges allowed under HIPAA and in excess of the charges allowed under the Department of Health and Human Services ("DHHS") Access Guidance.

On March 20, 2017, Plaintiffs filed their Class Action Complaint [Doc. No. 1]. Plaintiffs assert six claims: (1) breach of contract; (2) unjust enrichment; (3) money had and received; (4) fraud; (5) negligent misrepresentation; and (6) violations of the Fair Business Practices Act, O.C.G.A. § 10-1-393, *et seq*. Plaintiffs also assert claims for punitive damages and attorneys' fees.

**II.  Analysis**

Defendants have moved to dismiss all of Plaintiffs' claims. The Court will address Plaintiffs' claims in turn.

2

AO 72A
(Rev.8/82)

### A.     Breach of Contract - Count I

Named Plaintiffs argue that they are the intended beneficiaries of the contracts entered into between their healthcare providers and Ciox and that these contracts were breached by Ciox when Ciox violated HIPAA and the DHHS Access Guidance.  In response, Defendants argue that Plaintiffs were never intended to be third-party beneficiaries of those contracts, and thus, Plaintiffs do not have standing to bring their breach of contract claims.  The Court agrees.

First, the Court must consider which state law to apply in construing the contracts at issue. Defendants have attached the relevant contracts to their Motion to Dismiss [Doc. No. 19-2].  The Court notes that there is a choice of law provision contained within Ciox's contract with Plaintiff Kuchenmeister's medical provider, HealthPartners, so the Court must apply Minnesota law in construing that contract.  The contracts under which Plaintiffs Hugger-Gravitt and Bretoi assert their rights are less clear, but it appears that either Georgia or Minnesota law would apply in construing these contracts.  Thus, the Court will analyze Plaintiffs' claims under both Georgia and Minnesota law.

Georgia and Minnesota law are in full accord as to whether and when a party is a third-party beneficiary of a contract.  In both Georgia and Minnesota,

3

when the signatories of a contract clearly did not intend a third party to benefit from the contract, the third party does not have standing to bring a claim to enforce its provisions. See O.C.G.A. § 9-2-20; Am. Fletcher Mortgage Co., Inc. v. First Am. Inv. Corp., 463 F.Supp. 186, 195 (N.D. Ga. 1978) (under Georgia law, "it must [c]learly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient."); Buchanan Plumbing Co., Inc. v. Regents of the Univ. of Minnesota, 215 N.W.2d 479, 484 (Minn. 1974) (under Minnesota law, the court must examine whether the purpose is for the third party to be benefitted). To determine whether the parties intended any third parties to be beneficiaries of the contracts, courts look to the language included in the contract. See, e.g., Carolina Cas. Ins. Co. v. R.L. Brown & Assocs., Inc., 2006 WL 211718, at *3 (N.D. Ga. Jan. 25, 2006) ("[T]he intention [for a third party to benefit] must be shown on the face of the contract."); Buchman Plumbing, 215 N.W.2d at 483 ("[a]lthough we have constantly been willing to give full force and effect to the rights of third-party beneficiaries, we have always required as a prerequisite some expression of intent on the part of the contracting parties that the person asserting such rights is to be a beneficiary of that contract").

4

Here, the three contracts at issue expressly provide that no third party is intended to benefit from the contracts and that no remedy or enforceable legal right is conferred upon any third party to the contracts. The contract under which Plaintiff Kuchenmeister asserts his claims provides:

> **No Third Party Beneficiary.** This BAA confers no enforceable legal right or remedy on any individual or entity other than the parties, unless otherwise expressly provided.

[Doc. No. 19-2, p. 31]. Likewise, the contract under which Plaintiff Bretoi asserts her claims provides:

> This Agreement inures to the benefit of the parties hereto and each Allina affiliate to or on behalf of which [Ciox] provides the Services, but not to the benefit of any other third party.

[Doc. No. 19-2, p. 56]. Finally, the contract under which Plaintiff Hugger-Gravitt asserts her claims provides:

> Nothing in this Addendum shall be construed to create any third party beneficiary rights in any person.

[Doc. No. 19-2, p. 71]. The unambiguous, plain language of these contracts precludes Plaintiffs' breach of contract claims.

Plaintiffs' arguments that they stood to benefit from Defendants' performance of these contracts are unavailing. Plaintiffs were at most incidental

5

beneficiaries to these contracts, and incidental beneficiaries do not have standing to pursue a third party claim for breach of contract. See Stroman v. Bank of Am. Corp., 852 F.Supp.2d 1366, 1374 (N.D. Ga. 2012) (where a plaintiff is merely an incidental beneficiary of a contract, and not an intended "third party beneficiary," the plaintiff does not have standing to enforce a contract); Wurm v. John Deere Leasing Co., 405 N.W.2d 484, 486 (Minn. App. 1987) ("Unless the contract expresses some intent by the parties to benefit a third party through contractual performance, a beneficiary is no more than a incidental beneficiary and cannot enforce the contract.").

Plaintiffs cite Minnesota's duty-owed test, but it is inapplicable here. Parties may contract out of the duty-owed doctrine, and it does not apply where "otherwise agreed between promisor and promisee." See Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 832-33 (Minn. 2012). As discussed above, the parties have "otherwise agreed" that there are no third party beneficiaries to these contracts, so the duty-owed doctrine is not applicable.

For these reasons, the Court finds that Plaintiffs do not have standing to assert their breach of contract claims.

6

### B. Unjust Enrichment and Money Had and Received - Counts II and III

Defendants argue that Plaintiffs' claims for unjust enrichment and money had and received are barred by the voluntary payments doctrine. In response, Plaintiffs argue that their payments were the product of fraud and were made under protest, specifically to mitigate harm from the imminent threat of collections and credit reporting.

The voluntary payments doctrine provides that when a payment is made "where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practices used by the other party," payments are deemed voluntary and cannot be recovered by the payor. O.C.G.A. § 13-1-13; Hanson v. Tele-Communications, Inc., No. C7-00-534, 2000 WL 1376533, at *3 (Minn. Ct. App. Sept. 26, 2000) (voluntary payments doctrine "clearly provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment"). Here, Plaintiffs have alleged that they knew all of the facts and the law related to what they contend Ciox should have charged them. Nonetheless, Plaintiffs made the payments even though they were allegedly incorrect.

AO 72A
(Rev.8/82)

When a plaintiff pays an invoice with knowledge that there was an overcharge, or even when the plaintiff did not know but had the ability to discover an overcharge, the voluntary payments doctrine bars recovery. See, e.g., Fitzgerald Water, Light & Bond Comm'n v. Shaw Indus., Inc., 606 S.E.2d 10, 12 (Ga. Ct. App. 2004). Paying "under protest" does not affect the application of the voluntary payments doctrine. In Georgia, the statute governing voluntary payments states that paying "[f]iling a protest at the time of payment does not change" the applicability of the voluntary payments doctrine. O.C.G.A. § 13-1-13. Minnesota case law is in accord. See Shane v. City of St. Paul, 6 N.W. 349, 349 (Minn. 1880) (paying under protest is of no avail, unless the payment was made under duress).

Moreover, Plaintiffs have made no allegation that any payment was made under duress, and even if they had, they could not meet their burden as a matter of law. Under Georgia law, "a payment is not made under compulsion or duress, but will be treated as voluntary, unless the party making payment does so to prevent the immediate seizure of his goods or the arrest of his person." Pew v. One Buckhead Loop Condo Ass'n, Inc., 700 S.E.2d 831, 835 (Ga. Ct. App. 2010). Under Minnesota law, duress arises when one pays an amount "in order to recover

8

possession of his personal property from another, who unjustly detains it." Fargusson v. Winslow, 25 N.W. 942, 943 (Minn. 1885). Here, Plaintiffs have only alleged that they made the payment "to avoid collection attempts" for failure to pay the invoice [Doc. No. 1, ¶¶ 95, 146, and 198]. These facts are not sufficient to constitute "duress" under Georgia or Minnesota law.

For these reasons, the Court finds that Plaintiffs' unjust enrichment and money had and received claims fail as a matter of law.

### C.    Fraud and Negligent Misrepresentation - Counts IV and V

Defendants contend that Plaintiffs' fraud and negligent misrepresentation claims fail because: (1) the Complaint does not allege any false statements, and (2) the allegations in the Complaint reveal that there was no justifiable reliance.

Under Georgia and Minnesota law, a fraud claims requires five essential elements: a false representation, scienter, inducement, reliance, and injury resulting from reliance on the false representation. O.C.G.A. § 9-11-9(b); Cox v. Bank of Am., N.A., 742 S.E.2d 147, 148 (Ga. Ct. App. 2013); Marteins v. Minnesota Min. & Mfg. Co., 616 N.W.2d 732, 747 (Minn. 2000). Similarly, the elements for a claim of negligent misrepresentation are a defendant's negligent supply of false information to foreseeable persons, reasonable reliance, and

9

economic injury as a result of such reliance.  <u>Liberty Capital, LLC v. First Chatham Bank</u>, 789 S.E.2d 303, 308 (Ga. Ct. App. 2016); <u>Hardin Cty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd</u>, 821 N.W.2d 184, 192 (Minn. 2012).

First, Defendants argue that Plaintiffs have failed to articulate a false representation in their Complaint.  In response, Plaintiffs argue that Defendants' systemic overcharging, through an inflated cost on their invoices, is the misrepresentation.  The Court agrees that Plaintiffs have sufficiently pled their fraud and negligent misrepresentation claims.  For example, Plaintiffs allege that "Defendants' invoices were a misrepresentation, misleading statements, and based on deceptive practices since they charged Plaintiffs and class members in excess of $6.50 for those services" [Doc. No. 1, ¶ 279].  Detailed descriptions of the invoices were alleged in the Complaint [Doc. No. 1, ¶¶ 70-82, 117-22, 166-72, and 295].  The invoices have also been attached as exhibits to the Complaint [Doc. Nos. 11-3, 11-8, and 11-10].  These allegations are sufficient to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9.

However, the Court agrees with Defendants that Plaintiffs' claims fail as a matter of law because the Complaint reveals that Plaintiffs did not justifiably rely

10

upon the invoices. Plaintiffs allege that they received their invoices, knew the invoices contained incorrect charges, and paid them anyway [Doc. No. 1, ¶¶ 71-91, 92-96 (Kuchenmeister), 114-16, 120-40, 144-47 (Hugger-Gravitt), and 167, 184-85, 192-93, and 198-200 (Bretoi)]. Not only did Plaintiffs not justifiably rely upon what was included in the invoice, each of Plaintiffs specifically indicated to Defendants that they were paying the invoices "under protest." Accordingly, Plaintiffs have not alleged and cannot establish the justifiable reliance required for a fraud and a negligent misrepresentation claim. These claims fail as a matter of law.

### D. Georgia Fair Business Practices Act - Count VI

Defendants contend that Plaintiffs fail to state a claim under the Georgia Fair Business Practices Act ("FBPA"). The FBPA deems "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" unlawful. O.C.G.A. § 10-1-393. A private claim brought under the FBPA has three essential elements: a violation of the Act, causation, and injury. Regency Nissan, Inc. v. Taylor, 391 S.E.2d 467, 470 (Ga. Ct. App. 1990). By its express language, the FBPA excludes claims based upon conduct that is regulated by a federal agency. O.C.G.A. § 10-1-396 ("Nothing in

11

this part shall apply to: (1) Actions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States.").

Georgia courts have repeatedly held that the FBPA does not apply where the action or transaction at issue is authorized or regulated by a state or federal regulatory agency. See Stewart v. SunTrust Mortg., Inc., 770 S.E.2d 892, 897-98 (Ga. Ct. App. 2015) (holding that the FBPA did not apply to mortgagors' action against mortgagee for wrongful foreclosure because the mortgage industry was regulated by the Georgia Residential Mortgage Act); Chancellor v. Gateway Lincoln-Mercury, 502 S.E.2d 799, 805 (Ga. Ct. App. 1998) ("The General Assembly intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise.").

Here, Plaintiffs are attempting to use HIPAA and related guidance as "guideposts" for their claims. Specifically, Plaintiffs rely upon agency guidance posted by DHHS on its public website on February 25, 2016. This guidance required Covered Entities for the first time to use one of three options to calculate

the patient rate for copies of electronic records: (1) actual cost, (2) average cost, or (3) a flat fee not to exceed $6.50.  This access guidance is merely a non-regulatory website posting of answers to frequently asked questions.  The posting came with no notice of rule-making, no publication in the Federal Register, and no comment period as required for a binding regulation under the Administrative Procedures Act.  See 5 U.S.C. § 553(b).

Plaintiffs clearly cannot pursue a private cause of action under the FBPA for a violation of HIPAA.  If they are attempting to assert a FBPA claim that Defendants' billing practices violated HIPAA and the related access guidance, then Plaintiffs' claim fails because the FBPA does not apply in extensively regulated areas of the marketplace.  If their FBPA claim is predicated on the Business Associate Agreements, this claim fails because Plaintiffs do not have rights as third-party beneficiaries under these contracts.  For these reasons, Plaintiffs' FBPA claim fails as a matter of law.

### III.   Conclusion

Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) [Doc. No. 19] is GRANTED as to Plaintiffs' breach of contract claim but otherwise DENIED.  Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) and 9(b) [Doc. No. 18]

13

is GRANTED as to all other remaining claims. The Clerk is DIRECTED to close this action.

    **SO ORDERED**, this 8th day of January, 2018.

                                                        _____
                                                        **RICHARD W. STORY**
                                                        United States District Judge

AO 72A
(Rev.8/82)