[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10468
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-01001-RWS


LEON KUCHENMEISTER,
CINDY A. HUGGER-GRAVITT,
BETH A. BRETOI,
individually and on behalf of all those similarly situated,

Plaintiffs - Appellants,

versus

HEALTHPORT TECHNOLOGIES, LLC,
d.b.a. IOD Incorporated,
d.b.a. Healthport Technologies, LLC,
IOD INCORPORATED,
CIOX HEALTH, LLC,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 24, 2018)

Before WILLIAM PRYOR, ANDERSON, and EDMONDSON, Circuit Judges.


PER CURIAM:


In this diversity action, Plaintiffs Leon Kuchenmeister, Cindy Hugger-Gravitt, and Beth Bretoi appeal the district court's dismissal of their complaint against Defendant Ciox Health, LLC.[1]  No reversible error has been shown; we affirm.

Defendant, a health information management services provider, contracts with healthcare providers to process patient requests for medical records.  Aspects of Defendant's business are governed by the Health Insurance Portability and Accountability Act ("HIPAA"), and by implementing regulations promulgated by the Department of Health and Human Services ("DHHS").

Each named Plaintiff requested copies of his or her medical records from a healthcare provider that had a contract ("Business Associate Agreement") with Defendant.  Pursuant to the terms of those Business Associate Agreements, Defendant processed and fulfilled Plaintiffs' medical records requests.  After providing each Plaintiff with the requested medical records, Defendant sent each Plaintiff an invoice for the amount owed to Defendant for having processed the

_____

[1] In 2015, Defendants HealthPort Technologies, LLC and IOD Incorporated merged, after which HealthPort Technologies changed its name to Ciox Health, LLC.

request.  Briefly stated, Plaintiffs contend that Defendant charged Plaintiffs more for processing their medical record requests than the amount permitted under HIPAA and under DHHS regulations.

Plaintiffs filed this putative class action against Defendant, alleging state law claims for breach of contract, unjust enrichment, and for money had and received.[2] The district court dismissed for lack of standing Plaintiffs' claim for breach of contract, pursuant to Fed. R. Civ. P. 12(b)(1).  The district court also dismissed for failure to state a claim -- pursuant to Fed. R. Civ. P. 12(b)(6) -- Plaintiffs' claims for unjust enrichment and for money had and received.

I.

Plaintiffs contend that Defendant breached the Business Associate Agreements between Defendant and Plaintiffs' healthcare providers by overcharging Plaintiffs for copies of their medical records, in violation of HIPAA and DHHS regulations.  The district court concluded that, because Plaintiffs were no third-party beneficiaries to the Business Associate Agreements, they lacked standing to sue for breach of contract.

---

[2] Plaintiffs also asserted against Defendant claims for fraud, negligent misrepresentation, and for violation of the Georgia Fair Business Practices Act.  Plaintiffs, however, have raised no challenge to the district court's dismissal of these claims on appeal.

When reviewing the district court's dismissal of claims pursuant to Rule 12(b)(1), we review <u>de novo</u> the district court's legal conclusions and review for clear error the district court's factual findings. <u>Williams v. Poarch Band of Creek Indians</u>, 839 F.3d 1312, 1314 (11th Cir. 2016). In reviewing a ruling on a motion to dismiss, we typically consider only "the face of the complaint and documents attached thereto." <u>Allen v. USAA Cas. Ins. Co</u>., 790 F.3d 1274, 1278 (11th Cir. 2015). In this case, however, we also consider the pertinent Business Associate Agreements, because those contracts are central to Plaintiffs' claim, were attached to Defendant's motion to dismiss, and the contents of those contracts are not in dispute. <u>See id</u>.

As an initial matter, the district court made no decision about whether Plaintiffs' claims were governed by Georgia or by Minnesota law. Concluding that the pertinent laws of both states were materially similar, the district court analyzed Plaintiffs' claims under both states' laws. We will do the same.

Under Georgia law, generally speaking, "one not in privity of contract with another lacks standing to assert any claims arising from violation of the contract." <u>Dominic v. Eurocar Classics</u>, 714 S.E.2d 388, 391 (Ga. Ct. App. 2011). A third party may, however, have standing to enforce a contract "if it clearly appears from the contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient." <u>Id</u>. In other words, "a third-

party beneficiary may be created only by the express terms of the contract." Id.

When the contract language is "clear and unambiguous, . . . the contract is to be

enforced according to its clear terms . . . ." Atlanta Dev. Auth. v. Clark Atlanta

Univ., Inc., 784 S.E.2d 353, 357 (Ga. 2016).

In a similar manner, under Minnesota law, "one who is not a party to a

contract [generally] has no rights under the contract, but a third party may enforce

a promise made for his benefit" under certain circumstances. Caldas v. Affordable

Granite & Stone, Inc., 820 N.W. 2d 826, 832 (Minn. 2012) (quotations omitted).

Minnesota courts require -- as a "prerequisite" to allowing a third party to sue

under a contract -- "some expression of intent on the part of the contracting parties

that the person asserting such rights is to be a beneficiary of that contract."

Buchman v. Plumbing Co. v. Regents of Univ. of Minn., 215 N.W. 2d 479, 483

(Minn. 1974) (emphasis in original).  Courts look to the contract language in

determining the intent of the parties: "[w]hen the language of the contract is clear

and unambiguous, we enforce the agreement of the parties as expressed in the

contract." Caldas, 820 N.W. 2d at 832.

The Business Associate Agreements involved in this case each contain a

contract provision establishing unambiguously that the contracting parties intended

no third party to have a legally enforceable right under the contract.[3]  Given the

clear and unambiguous contract language, the district court concluded properly that

Plaintiffs had no legally protected rights under the pertinent Business Associate

Agreements.  Plaintiffs, thus, lacked standing to pursue a claim based on an alleged

breach of those contracts.  The district court committed no error in dismissing

Plaintiffs' breach of contract claim pursuant to Rule 12(b)(1).[4]

---

[3] The Business Associate Agreement between Defendant and HealthPartners, under which
Plaintiff Kuchenmeister brings his claim, contains this provision:

> **No Third Party Beneficiary.**  This [Business Associate Agreement] confers no
> enforceable legal right or remedy on any individual or entity other than the
> parties, unless otherwise expressly provided.

The Business Associate Agreement between Defendant and Allina Health System, under which
Plaintiff Bretoi brings her claim, contains this provision:

> This Agreement inures to the benefit of the parties hereto and each Allina affiliate
> to or on behalf of which [Ciox] provides the Services, but not to the benefit of any
> other third party.

The Business Associate Agreement between Defendant and HealthEast, under which Plaintiff
Hagger-Gravitt brings her claim, contains this provision:

> Nothing in this Addendum shall be construed to create any third party beneficiary
> rights in any person.

[4] On appeal, Plaintiffs contend they asserted a second breach of contract claim -- based on
Defendant's alleged breach of the invoices sent to each Plaintiff -- and that the district court
erred in failing to address that claim.  The operative complaint in this case asserts a single count
for breach of contract: based only on Defendant's alleged breach of the Business Associate
Agreements.  According to Plaintiffs, however, they asserted this new breach-of-contract claim
during oral argument on Defendant's motion to dismiss in the district court.  Even if true,
because Plaintiffs failed to seek leave from the district court to file an amended complaint, the
purported second breach-of-contract claim was not raised properly below.  Cf. Gilmour v. Gates,
McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (in the context of a motion for summary
judgment, "the "proper procedure for plaintiffs to assert a new claim is to amend the complaint

II.

Plaintiffs next challenge the district court's dismissal of their claims for

unjust enrichment and for money had and received.  The district court concluded

that Plaintiffs' claims were barred by the voluntary payment doctrine.  We agree.

We review de novo a district court's dismissal for failure to state a claim,

accepting all properly alleged facts as true and construing them in the light most

favorable to the plaintiff.  Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261,

1265 (11th Cir. 2012).  To survive a motion to dismiss for failure to state a claim,

"a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937,

1949 (2009) (quotation omitted).

Under Georgia's voluntary payment doctrine, payments made "where all the

facts are known and there is no misplaced confidence and no artifice, deception, or

fraudulent practice used by the other party are deemed voluntary and cannot be

recovered unless made under an urgent and immediate necessity therefor or to

release person or property from detention or to prevent an immediate seizure of

person or property."  O.C.G.A. § 13-1-13.  Likewise, Minnesota law provides that

---

in accordance with Fed. R. Civ. P. 15(a).").  Thus, Plaintiff's argument will not be considered on appeal.  See Albra v. Advan, Inc., 490 F.3d 826, 828 n.1 (11th Cir. 2007).

"[o]ne who makes a payment voluntarily cannot recover it back on the ground that he was under no legal obligation to make it." Thomas Peebles & Co. v. Sherman, 181 N.W. 715, 716 (Minn. 1921). "The party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply." Telescripps Cable Co. v. Welsh, 542 S.E. 2d 640, 642 (Ga. Ct. App. 2000).

Here, Plaintiffs seek to recover payments already made to Defendant: payments made after Defendant had already fulfilled Plaintiffs' medical records requests. Plaintiffs made payments to Defendant despite knowing that Defendant had likely charged more for the already provided medical records than was legally permitted: all three Plaintiffs disputed the amount charged by Defendant. Moreover, Plaintiffs Hugger-Gravitt and Bretoi responded to Defendant's invoice through their lawyer and provided Defendant with a copy of a DHHS publication addressing patient access to health information under HIPAA.

That Plaintiffs made their payments "under protest" is insufficient to avoid application of the voluntary payments doctrine. See O.C.G.A. § 13-1-13 ("Filing a protest at the time of payment does not change the rule prescribed in this Code section."); Shane v. St. Paul, 6 N.W. 349, 349 (Minn. 1880) (making a payment under "protest is of no avail except in the case of a payment made under duress or coercion, and then only as evidence tending to show that the alleged payment was the result of the duress."). Nor have Plaintiffs alleged facts sufficient to show

plausibly that they made the payments to Defendant under duress or coercion.

Making a payment simply to "avoid collection attempts" does not rise to the level

of duress or coercion necessary to avoid application of the voluntary payments

doctrine.  See Pew v. One Buckhead Loop Condo. Ass'n, 700 S.E.2d 831, 835 (Ga.

Ct. App. 2010) (for purposes of Georgia's voluntary payment doctrine, "a payment

is not made under compulsion or duress . . . unless the party making payment does

so to prevent the immediate seizure of his goods or the arrest of his person.");

Fargusson v. Winslow, 25 N.W. 942, 943 (Minn. 1885) ("When one, in order to

recover possession of his personal property from another who unjustly detains it, is

compelled to pay money which is demanded as a condition of delivery, such

payment, when made under protest, is deemed to have been made compulsory or

under duress, and may be recovered back.").

Plaintiffs argue that the voluntary payments doctrine is inapplicable where

the defendant has engaged in fraud or deception.  But Plaintiffs have alleged no

facts from which a factfinder could conclude reasonably that Plaintiffs were

deceived by -- or made payments in reliance on -- Defendant's alleged fraudulent

representations.  Instead, Plaintiffs challenged the charges listed in Defendant's

invoices but then paid the invoices anyway, although "under protest."  See Cotton

v. Med-Cor Health Info. Sols., 472 S.E. 2d 92, 96 (Ga. Ct. App. 1996) (to the

extent defendants' practice of overcharging patients for medical records "may have

constituted some sort of artifice," the voluntary payments doctrine barred

plaintiffs' recovery because nothing evidenced that the alleged artifice "induced

the plaintiffs into making the payments they seek to recover").

We also reject Plaintiffs' contention that the voluntary payments doctrine is

inapplicable here based on equitable concerns: Defendant's alleged bad faith and

as a matter of public policy.  In making this argument, Plaintiffs rely on the

Georgia Supreme Court's decision in Gulf Life Ins. Co. v. Folsom, 49 S.E.2d 368

(Ga. 1986), in which the Court construed Georgia's voluntary payments doctrine in

conjunction with equitable principles.  But Gulf Life Co. addressed only whether a

plaintiff could recover a payment made by mistake, either due to a lack of

diligence or to negligence in failing to discover the true facts.  Id. at 370, 373.  In

contrast, this case involves no mistaken payment: Plaintiffs, instead, made

payments despite knowing they were likely being overcharged.  The circumstances

involved in Gulf Life Co. are, thus, distinguishable from this case.

Plaintiffs have failed to show that the voluntary payments doctrine is

inapplicable to this case.  The district court committed no error in concluding that

Plaintiffs were barred from seeking recovery of payments made voluntarily to

Defendant.

AFFIRMED.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 24, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 18-10468-DD
Case Style: Leon Kuchenmeister, et al v. Healthport Technologies, LLC, et al
District Court Docket No: 1:17-cv-01001-RWS

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellants.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carson Wynn, DD at 404-335-6181.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs